**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

CARMEN VIERA, individually and as
Personal Representative of the Estate of
PEDRO ROSADO-RIVERA,

    Plaintiff,

v.                                        Case No: 5:16-cv-1-Oc-30PRL

BASF CATALYSTS LLC,
SUPERIOR MATERIALS, INC., and
WHITTAKER, CLARK & DANIELS,
INC.,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant BASF Catalysts LLC's ("BASF") Partial Motion to Dismiss (Docs. 18, 19),[1] Plaintiff's response in opposition (Doc. 23), and BASF's reply (Doc. 27). The Court, having reviewed the motion, response, reply, and relevant pleadings, and being otherwise fully advised in the premises, concludes that BASF's partial motion to dismiss should be granted.

### BACKGROUND

Originally, Plaintiff initiated this action in the Southern District of New York in her individual capacity and as representative for the estate of her deceased husband, Pedro

---

[1] Defendants Whittaker, Clark & Daniels, Inc. ("Whittaker") and Superior Materials, Inc. ("Superior") joined BASF's partial motion to dismiss. (Docs. 21, 22).

Rosado-Rivera. (Doc. 1). Plaintiff alleges that Rosado-Rivera developed mesothelioma due to exposure to an asbestos-containing auto-body filler distributed by Superior and containing asbestos-laced talc manufactured and distributed by BASF and Whittaker. Plaintiff contends that Rosado-Rivera used the auto-body filler for more than four decades while working at auto shops in New York, Puerto Rico, and Florida. She alleges, specifically, that Rosado-Rivera used the filler in New York between 1959 and 1968; in Puerto Rico between 1968 and 1992; and in Florida thereafter. Rosado-Rivera developed mesothelioma in April 2014 and died on May 23, 2014.

As a result of her husband's death, Plaintiff filed an amended complaint asserting six claims against Defendants under New York law,[2] including (1) negligence, (2) intentional and negligent misrepresentation, (3) strict liability, (4) concerted acts, (5) wrongful death, and (6) loss of consortium. (Doc. 9). BASF, joined by Superior and Whittaker, moved to transfer the case to the Middle District of Florida on September 1, 2015, and the Southern District of New York granted the motion. (Doc. 45).

BASF now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims for intentional and negligent misrepresentation and concerted acts,

---

[2]BASF asserts that it is not "clear" whether New York law applies to Plaintiff's claims. (Doc. 19 at 4 n.3). Nevertheless, BASF applies New York law in its motion to dismiss and argues that the Court can analyze its motion under New York law as pled by Plaintiff without conducting a choice-of-law analysis. (*Id.*). As an initial matter, whether New York law applies is not pertinent in deciding the motion to dismiss, as New York and Florida law do not differ significantly with respect to a claim of intentional or negligent representation. *Compare Liberty Mut. Ins. Co. v. Palace Car Servs. Corp.*, No. 06-cv-4881 (FB)(CLP), 2007 WL 2287902, at *2 (E.D.N.Y. Aug. 8, 2007); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012); *with Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1338 (S.D. Fla. 2011); *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010). Additionally, given the fact intensive inquiry required to determine the applicable law, a choice-of-law determination at this stage would be premature. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 451 n.6 (E.D.N.Y. 2013). The parties should be ready, however, to address the choice-of-law issue at a later stage of the litigation.

arguing that Plaintiff has not established a prima facie case for these claims. (Docs. 18, 19).

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. In considering a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

As to Plaintiff's claim for concerted acts (Count IV), Plaintiff did not respond to BASF's contention that the claim is insufficiently pled. (Doc. 23). Rather, Plaintiff states, "if the court finds BASF carried the burden on its motion to dismiss . . . , Plaintiff requests that the dismissal of that cause as to BASF be entered without prejudice." (*Id.* at 1 n.1). By failing to address BASF's arguments, Plaintiff appears to abandon her claim for concerted acts. *See Pelfresne v. Village of Williams Bay*, 917 F. 2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." (citations omitted)). Because Plaintiff essentially concedes BASF's arguments as to her claim for

3

concerted acts, Plaintiff's claim should be dismissed. However, the dismissal is without prejudice; Plaintiff may amend the claim.

As to Plaintiff's claim for intentional or negligent representation (Count II), BASF argues that Plaintiff has not identified any factual details of the alleged misrepresentations, including who made them, when and how they were made, and how Rosado-Rivera came to rely upon them. (Doc. 19 at 5). Where a plaintiff's claims sound in fraud, as does Plaintiff's claim for intentional or negligent misrepresentation,[3] a plaintiff must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "a party must state with particularity the circumstances constituting fraud." *See also Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (discussing Rule 9(b)'s requirements).

"To comport with Rule 9(b), a plaintiff must not only give the who, what, and when with regard to an alleged false or misleading statement, but also must 'give particulars as to the respect in which plaintiff contends the statements were fraudulent.'" *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). The Second Circuit has explained:

> The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against

---

[3] To state an intentional misrepresentation (or fraud) claim under New York law, a "plaintiff must establish that: '(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance.'" *Liberty Mut. Ins. Co.*, 2007 WL 2287902, at *2 (quoting *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998)). Similarly, a claim of negligent misrepresentation requires a plaintiff to demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Abu Dhabi Commercial Bank*, 910 F. Supp. 2d at 546.

4

> the institution of a strike suit.  Thus, although Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent.  Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.  An ample factual basis must be supplied to support the charges.

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (citations omitted).

Here, Plaintiff makes the following factual allegations as to each defendant (Doc. 9): [4]

BASF owned or operated a talc mine in Johnson, Vermont, from 1967 until 1983.[5] (Doc. 9 at ¶ 17).  The talc ore from that mine contained asbestos or asbestiform fibers and was processed or manufactured into talc products, including auto-body filler.  (*Id.* at ¶¶ 19, 20, 21).  In the 1970s and 1980s, BASF and various third parties conducted tests and assays on its talc ore and products and on the environment in which the ore was mined and determined that the talc ore and products contained asbestos or asbestiform fibers.  (*Id.* at ¶¶ 23, 24).  Even though BASF was aware of these results, BASF represented to its customers, industry trade groups, and the federal government that its talc was asbestos free and marketed the talc as a viable asbestos substitute.  (*Id.* at ¶ 25).  BASF manufactured,

---

[4] For the purposes of resolving BASF's motion to dismiss, the Court accepts the factual allegations of Plaintiff's complaint as true.  *See Erickson*, 551 U.S. at 94.

[5] Plaintiff's claims against BASF are asserted in its capacity as a successor-in-interest to predecessor corporations: Engelhard Corporation, Engelhard Industries, Engelhard Minerals & Chemicals Corporation, Minerals & Chemicals Phillip Corporation, Eastern Magnesia Talc Company, Porocel Corporation, and Pita Realty Limited. (Doc. 9, ¶ 2).  For ease of reference, these parties are collectively referred to as BASF.

supplied, distributed, and sold asbestos-containing talc, which was an ingredient in auto-body filler used by Rosado-Rivera. (*Id.* at ¶ 26).

From 1960 until 1990, Whittaker supplied, distributed, and sold talc containing asbestos or asbestiform fibers that was used as an ingredient in auto-body fillers. (*Id.* at ¶¶ 27, 28, 29). Whittaker conducted tests and assays on its talc products and the results revealed that the talc products contained asbestos or asbestiform fibers. (*Id.* at ¶ 33). Although Whittaker knew that its talc products contained asbestos or asbestiform fibers, it did not place a warning label regarding the hazards of asbestos on its talc products sold to customers. Whittaker manufactured, supplied, distributed, and sold asbestos-containing talc products, which were ingredients in auto-body filler used by Rosado-Rivera. (*Id.* at ¶ 35).

Superior was a regional distributor of the auto-body filler used by Rosado-Rivera, and the auto-body filler did not have a warning label regarding the hazards of asbestos. (*Id.* at ¶¶ 37, 38). Rosado-Rivera was exposed to asbestos from the auto-body filler distributed, supplied, and sold by Superior. (*Id.* at ¶ 39). Plaintiff does not assert that Superior was aware or should have been aware that the auto-body filler contained asbestos or asbestiform fibers.

Based on these allegations, Plaintiff has not satisfied Rule 9(b)'s particularity requirement because her allegations lack the necessary specificity. For example, as to BASF, Plaintiff alleges that BASF represented to customers, industry trade groups, and the federal government that its talc was asbestos free and a viable asbestos substitute when it was aware that its talc contained asbestos (the "what"), but Plaintiff does not explain the

6

"where" or "how" of these misrepresentations. Unlike *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *23-24 (E.D.N.Y. Aug. 29, 2013), where the plaintiffs alleged that the misrepresentation was placed prominently on the packaging of the defendants' products, Plaintiff has not demonstrated how the misrepresentations were made or how Rosado-Rivera came to rely upon them. *Cf. Hughes*, 930 F. Supp. 2d at 472-76 (concluding that the plaintiff met Rule 9(b)'s particularity requirement as to claims for intentional and negligent misrepresentation). Additionally, Plaintiff generally avers that the conduct occurred in the 1970s and 1980s, over almost two decades, which is not sufficient to put BASF on notice as to the "when." The same is true as to Plaintiff's allegations against Whittaker.

As to Superior, Plaintiff has not alleged with specificity the actions constituting the misrepresentation (the "what"), how, when, or where the misrepresentation occurred, and whether Rosado-Rivera relied upon the misrepresentation.

BASF also argues that Plaintiff's claim is insufficient because she pled it generically as to all defendants and does not explain which defendant made a particular misrepresentation. (Doc. 19 at 6). This is not precisely accurate. While the allegations contained in the count for negligent or intentional misrepresentation refer to Defendants collectively (Doc. 9, ¶¶ 66-70), Plaintiff's factual allegations attempt to distinguish which acts were allegedly taken by each defendant (*Id.* at ¶¶ 17-39). The cases relied on by BASF are distinguishable in that they involve allegations significantly more deficient than Plaintiff's. *See Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 235 (S.D.N.Y. 2014) (distinguishing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). While

7

Plaintiff's claim is deficient in that it lacks specificity, this particular argument does not constitute an appropriate basis for dismissal of Plaintiff's claim.

Because Plaintiff's claim for intentional or negligent misrepresentation as to BASF, Whittaker, and Superior is insufficient under Rule 9(b), it should be dismissed.  However, Plaintiff will be given an opportunity to amend this claim.

## CONCLUSION

Accordingly, it is therefore **ORDERED AND ADJUDGED** that:

1.  Defendant BASF Catalysts LLC's ("BASF") Partial Motion to Dismiss (Docs. 18, 19) is GRANTED.

2.  Counts II and IV are DISMISSED without prejudice.

3.  Within fourteen (14) days of the date of this Order, Plaintiff may file a second amended complaint.

**DONE** and **ORDERED** in Tampa, Florida, this 8th day of April, 2016.

*/s/ James S. Moody, Jr.*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record